**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Huggins,<br><br>    Plaintiff,<br><br>v.<br><br>Walbro LLC,<br><br>    Defendant. | No. CV-16-00590-TUC-DCB<br><br>**ORDER** |

The Court finds that the Plaintiff has made a *prima facie* case of age and sex discrimination but has failed to produce any evidence of pretext to rebut the Defendant's assertion of a legitimate reason for not promoting the Plaintiff to the VPHR position. The Court grants the Motion for Summary Judgment.

Plaintiff was hired by Defendant on August 14, 2013, when she was 61 years old[1] as Senior Human Resources Manager, the number two position in Walbro's human resource department. In April 2015, when she was 62 years old, she was promoted to Human Resources Director. She was supervised by Vice President, Human Resources and Compliance, Ann Guernsey, until July 2015, when Guernsey was demoted to Chief Compliance Officer, leaving the Vice President, Human Resource (VPHR) position open. Walbro did not post the opening internally, but Plaintiff sent an email and her resume to Chief Executive Officer, Matt Riddle, allegedly inquiring about the position. According to the Plaintiff, he responded by telling her that she would not be considered for the

---

[1] **Plaintiff was born August 9, 1952.**

position. Plaintiff alleges she was fully qualified for it. On October 8, 2015, Walbro hired Andy Arkells, who was substantially younger and a man. Plaintiff charges Walbro with sex and age based discrimination. (Second Amended Complaint (Doc. 4) at 2-3.)

Walbro seeks summary judgment. Walbro argues that the Plaintiff cannot make a *prima facie* case of either age or sex based discrimination. Alternatively, Defendant asserts that even if she does make a *prima facie* case, they hired Arkells for legitimate nondiscriminatory reasons and she cannot establish pretext because there is absolutely no evidence whatsoever that Plaintiff was denied the promotion to the VPHR position because of her age or sex.

First, Defendant argues that the qualifications for the position were based on recommendations of a third-party consultant whom Plaintiff has not charged with discrimination. The record reflects that the Plaintiff did not possess the qualifications for the job because: she never held an executive HR position, had no global experience, had never interacted with a Japanese board, and had no experience influencing Japanese executives.

Second, she cannot establish she applied for the VPHR position, and therefore cannot show she was denied the position. Based on an email sent by the Plaintiff to Riddle on August 5, he understood that Plaintiff was not interested in the position.

Third, Walbro submits alternatively, that the two finalists for the position, and Arkells specifically, were more qualified than Plaintiff; the search, which was conducted by a third party, included female candidates and did not exclude candidates based on age—Defendant sought "seasoned candidates." Neither Riddle nor any person in any management position at Walbro made any ageist or anti-female comments.

1. <u>Standard of Review for Summary Judgment</u>

On summary judgment, the moving party is entitled to judgment as a matter of law if the Court determines that on the record there is no genuine issue as to any material fact to be decided by a jury. Fed.R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but is not required to

support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). In determining whether to grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the non-moving party. *Id.*

The moving party is under no obligation to negate or disprove matters on which the non-moving party bears the burden of proof at trial. *Id.* at 325. Rather, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Id.*

If the moving party meets its burden, then the non-moving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed.R.Civ.P. 56(e)). To carry this burden, the party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 252. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

This trilogy of 1986 cases opened the door for the district courts to rely on summary judgment to weed out frivolous lawsuits and avoid wasteful trials. *Rand v. Rowland*, 154 F.3d 952, 956 -957 (9th Cir. 1998);10A Charles A Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice & Procedure, § 2727, at 468 (1998). As explained in *Celotex*: "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Importantly, on summary judgment the question is limited to whether there is a genuine issue for trial. It is not the Judge's role on a motion for summary judgment to determine the truth of the matter or to weigh the evidence, or determine credibility. The question is simply whether there is sufficient evidence that a reasonable jury could find in favor of the non-moving party, the Plaintiff. *Anderson*, 477 U.S. at 252.

2. *Prima facie* Age and Sex Based Discrimination

It is unlawful for an employer to discriminate based on an individual's age or sex. 29 U.S.C. § 623(a)(1) (the Age Discrimination in Employment Act); 42 U.S.C. § 2000e-2(a)(1) (Title VII Civil Rights Act of 1964). The Plaintiff may establish her claims of discrimination by either direct evidence of conduct or statements made by persons involved in the decision-making process that may be viewed as directly reflecting a discriminatory attitude was more likely than not a motivating factor in the employment decision. *Enlow v. Salem-Keizer Yellow Cab Co.,* 389 F.3d 802, 812 (9th Cir. 2004). The Plaintiff may also carry her initial burden by presumption under the *McDonnel Douglas* burden shifting framework: 1) The employee establishes a *prima facie* case of discrimination, an inference of discrimination arises and the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its employment decision. 2) If the employer does so, the burden shifts back to the employee to prove that the employer's explanation is a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 791, 802 (1973).

In a failure to promote case, a *prima facie* case of discrimination is made if the Plaintiff produces evidence that she: 1) was at least 40 years old/was a member of a

protected class, i.e., female; 2) she was qualified for the position for which an application was submitted, 3) she was denied the position, and 4) the promotion was given to a substantially younger person/a male. *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012); *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005).

Plaintiff does not submit any direct evidence of discriminatory animus. She relies on the *McDonnell Douglas* presumption. Defendant's Motion for Summary Judgment challenges the second and third prong of Plaintiff's *prima facie* case. Defendant argues the facts are as follows: The Plaintiff's April 2015 promotion to HR Director was approved by Defendant's CEO, Riddle, who had been hired approximately one month earlier. It is undisputed that the Plaintiff did not "formally" apply for the VPHR position with the third-party consultant hired by Walbro to conduct the job search. During the time that the search was underway to fill the VPHR position, she sent Riddle an email on August 5, 2015, from which he concluded that she was "not interested in the position" and had taken "herself out of the running." The Defendant asks the Court to find that as a matter of fact, she did not apply for the position and they did not deny her the promotion, therefore, as a matter of law the Plaintiff's *prima facie* case fails. Based on a resume she attached to the August 5, 2015, email and Riddle's own observations, Defendant asks the Court to conclude that Plaintiff was not qualified for the VPHR position.

The Defendant relies on the August 5 email, as follows:

> . . . Plaintiff wrote, "I have no expectations that I will be considered to fill the top HR role, even on an interim basis." [SoF at ¶ 44]. Plaintiff also wrote, "I said to you the first week you were with Walbro that we need good HR leadership and that I don't consider myself that person." [SoF at ¶ 45]. Further, Plaintiff wrote that she hoped "we land a really strong leader – I hope for someone with the level of knowledge I have or greater in many of the functional areas of HR. Someone with global experience. I want someone to lead me and challenge me. If we can't find someone, I am capable of stepping in and leading the HR organization. Not proposing I am the best – but I am good and I sound [sic] experience." [SoF at ¶ 45].

According to the Defendant, "[n]othing in Plaintiff's email signifies that she is interested in or that she is applying for the VPHR position." (MSJ (Doc. 62) at 11.) According to the Defendant, the Plaintiff has admitted that she is not qualified for the position and cannot credibly argue she applied for the VPHR position because even she

- 5 -

recognized that "she 'shot herself in the foot' by sending the August 5 email." *Id.* (citing D's SOF at ¶ 46). Likewise, Plaintiff admitted that "when Riddle spoke to her about the VPHR position, . . . after she sent her August 5 email, she never asked that she be considered for the position." *Id.* at 12 (citing D's SOF at ¶¶ 52-54). "Plaintiff also admits she did not have any subsequent conversations with Riddle about becoming the VPHR." *Id.* (citing D's SOF at ¶ 53). According to the Defendant based on Plaintiff's admissions, "the sum total of her efforts relative to the VPHR position was to send the August 5 email," which, as Riddle testified, "did nothing but convey to him that Plaintiff was 'not interested in the position' and had taken 'herself out of the running.'" *Id.* (citing D's SOF at ¶ 46).

The Defendant asks the Court to find as a matter of fact that the Plaintiff did not do "everything in her power" to apply for the VPHR opening, and therefore, as a matter of law she cannot show that she applied for the position, which is a required element of her *prima facie* case.

The Court cannot, however, make this finding of fact based on the record because the Plaintiff disputes these material facts.

It does not take much for a plaintiff in a discrimination case to overcome a summary judgment motion. *France v. Johnson,* 795 F.3d 1170, 1175 (9th Cir. 2015) (citing e.g.*, Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 499 (9th Cir.2015); *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.2008); *Metoyer v. Chassman*, 504 F.3d 919, 939 (9th Cir.2007); *Dominguez–Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1042 (9th Cir.2005); *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir.2000). "'This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" *Id.* (quoting *Chuang*, 225 F.3d at 1124).

Beginning with the August 5, 2015, memo, Plaintiff relies on the entirety of its message. It begins with the stated lack of expectation that she will be considered to fill

the top HR role, which she explains was her conclusion based on experience both before and after Riddle's stewardship that "no woman would be elevated to the position of HRVP." (P's SOF 8 (citing Huggins Declar. ¶ 8.)

Her memo then lays out a 100-day plan she is proposing, if she were given an opportunity to partner with Riddle to guide Walbro. Then, she explains the self-depreciating remark which Defendant's describe here as her admission that she was not qualified for the VPHR position. She explains that she made the comment to Riddle the first week of his employment with Walbro to show him that she "was not trying to shove Ann out of the way to gain ground for [herself]. She reminded him that she also said, she plays "a very good second but in that role [she] need[s] a good number 1. That number 1 doesn't have to be another HR person." She continues by informing Riddle that she "has reported to CEOs and CAOs and some of her greatest achievements were as '2$^{nds}$' to them but as the leader of the HR function." She finishes, as noted by the Defendant, with the "hope we land a really strong HR leader—I hope for someone with the level of knowledge I have or greater in many of the functional areas of HR." (D's SOF, Ex. 14; Memo.)

Arguably, Plaintiff was not taking herself out of the running but was instead giving Riddle a subtle reminder of his obligation under the ADEA and Title VII to hire someone who was "at least as," if not more, qualified than she was for the job. According to the Plaintiff, Walbro had no formal process for posting or not posting jobs. (P's SOF ¶ 6 (citing Huggins Depo. (Doc. 71) at 165-166)). Plaintiff waited for some time for something to be posted regarding the VPHR position and even "went out and looked for the job posting." *Id.* ¶ 7 (citing Huggins Depo. at 212). By the time she sent the August 5 email, she believed that Riddle was not going to consider her for the VPHR position. *Id.* ¶ 8 (citing Huggins Depo. at 101.) According to the Plaintiff, a day or two after the email, Riddle came into her office and thanked her for expressing interest, and said "we are looking outside the organization for a specific type of individual." *Id.* ¶ 9

(citing Huggins Depo. at 105-106). She understood from his comments that he understood she "was asking for the job." *Id.* ¶ (citing Huggins Depo. at 218).

As Defendant's recognize, the failure to file a formal application will not necessarily bar a plaintiff from establishing a *prima facie* case, the plaintiff must show that she "made every reasonable attempt to convey [her] interest in the job to the employer." (MSJ (Doc. 62) at 11 (quoting *Equal Employment Opportunity Comm'n v. Metal Serv. Co.,* 892 F.2d 341, 348 (3rd Cir. 1990). "A verbal inquiry or request for work has been held adequate to satisfy the *prima facie* case requirements where a defendant has turned an applicant away without permitting her to file an application or where other evidence shows that the plaintiff expressed an interest in a position and should have been considered for it. *Int'l Bro. of Teamsters v. United States,* 431 U.S. 324, 365-67 (1977). In this case, the Plaintiff was expressly told the company was looking outside to fill the position. In other words, Riddle told her she would not be considered for the VPHR position.

A failure to apply formally for a job will not preclude a valid claim for discriminatory hiring if a plaintiff can demonstrate she was deterred from applying by knowledge that her application would be futile because of the defendant's discriminatory policies or if there was no consistent application process. *Id.* Here, the Plaintiff presents evidence that there was no consistent application process. Riddle farmed the hiring process for the VPHR position to outside consultants. He hired Mike Summers, with Avanti Group, to do a study of Walbro's "C-Suite" executive team, which resulted in Guernsey being demoted which opened up the VPHR position. Riddle hired Michael Enlow & Associates to conduct a candidate job search, with Summers being their contact point. Enlow prepared a posting for Monster.com, which included a list of "key responsibilities" and "key requirements" compiled from information from a Walbro job description and communications with Summers.[2] Plaintiff had no knowledge about the

---

[2] **Neither Enlow nor Summers are sued by Plaintiff.**

- 8 -

1 job announcement, including when, where, or how to apply, and was not privy to the job description.

More importantly, Riddle responded to Plaintiff's August 5 email inquiry regarding the position by expressly telling her they were looking outside the company to fill the position. To the extent the Defendant suggests that the Plaintiff should not have been deterred by Riddle's response, and could have asked more questions and insisted on applying for the position, this is a question for a jury. On summary judgment, the Court concludes that a reasonable jury might find that the Plaintiff has shown that she made every reasonable attempt to convey to the Defendant her desire to apply for the job.

In his deposition testimony, Riddle was asked if he ever considered Huggins for the position. He responded: "Absolutely." He said he considered her throughout the process, beginning as soon as Summers' reported that Guernsey should be replaced. He logically looked to the number two person, Huggins, to see if she had the global and strategic qualities he was looking for in a new VPHR. He spent time with her over several weeks, "informally" and "unbeknownst," to her, interviewing her about her goals, ideas, and work responsibilities. He said he "could see she wasn't very strategic. She was very tactical. But the final thing for [Riddle] was her email, where she took herself out of the running. She said, [], she doesn't want the job, basically. Had she said she wanted the job, I would have sent her to Enlow to be one of the people to be interviewed." He explained that if she had "specifically said I'm interested in this position, I would have sent the resume to Enlow with specific instructions to interview her." "Can't guarantee she could have got the job, but I can guarantee she would have gotten an interview." (Riddle Depo. (Doc. 70) at 86-88.)

In Reply and by declaration, Riddle seeks to roll-back his answers given during his deposition to mean only that as an expression of common courtesy to a current employee, he would have referred her to Enlow, but he did not mean to convey with these answers that he believed Plaintiff was qualified for the job or even mean that she should have gotten an interview. (Reply, Ex. A: Riddle Decl. (Doc. 88-2) ¶ 8.) The Court finds that a

reasonable jury might reject Riddle's declaration testimony as being contrary to his deposition testimony. Because a reasonable jury might conclude based on Riddle's deposition answers that he did believe Huggins met the basic qualifications for the position.

Here, Plaintiff's formal application for the VPHR position was short-circuited by Riddle when he told her she would not be considered for the position. So as to not penalize the Plaintiff for this, the Court compares the Plaintiff's qualifications as submitted here to the qualifications identified by the Defendant for the VPHR position. The Court does not rely on Plaintiff's subjective opinion regarding her qualifications. *Bradley v. Harcourt, Brace and Co.,* 104 F.3d 267, 270 (9th Cir. 1996). Construing the evidence and inferences in Plaintiff's favor, the Court considers what is arguably an admission by Riddle during his deposition that the Plaintiff was qualified for the job. The Court also relies on facts represented in her resume regarding her experience and her job description as HR Director.

According to the Defendant, the job description for the VPHR position included: 1) being a seasoned leader, 2) having strong global experience, 3) serving as a key business partner to leadership, 4) having experience in prior large complex businesses, 5) having an understanding of Japanese culture and language, and 6) understanding how to influence a Japanese board. According to the Plaintiff, if she had been afforded an opportunity to revise her resume to address this job description, it would have reflected: 1) 20 years of HR leadership experience (3 years Walbro (2500 employees); 2 years Konami Gaming (400 U.S. employees, 4500 global employees); 3 years Sterling Savings Bank (3000 employees); 1 year Itron (9000 employees 100 countries); 1 year Crosstex Energy (350 employees 5 states); 2) 12 years living and working in Japan, with 8 years of experience in global companies serving North and South America, Europe, APAC; 3) coach certification training, "personalysis" training , MBTI training, Predictive Index Certification. Plaintiff combined "experience in prior large complex businesses" with her response to "being a seasoned leader" and addressed a category of "broad HR knowledge

and experience" in lieu of Defendant's category 5, "understanding how to influence a Japanese board. (Huggins Decl. (Doc. 82), Ex. 27 (Doc. 82-3)).

The Plaintiff's job description for HR Director included as a justification for the promotion the fact that Plaintiff is "a seasoned HR professional with a broad range of professional competencies, who had assumed an expanded HR regional role in February 2014, including North America as well as global responsibilities in the areas of compensation, performance management and benefits. (Ds' SOF (Doc. 63), Ex. 6.)

The Defendant insists that the Plaintiff, nevertheless, did not have sufficient experience in playing a "strategic role" or having "strategic influence in Japanese management." The two sides debate the proper definition of "strategic" versus "tactical," but the Court does not need to resolve the dispute. There is enough evidence for a *prima facie* showing that she was qualified for the VPHR position.

The Court finds that the Plaintiff has established a *prima facie* case of sex discrimination because she has shown she was a member of a protected class, female, was qualified for the VPHR position for which she applied, was denied the position, and the promotion was given to a male.

Plaintiff was hired at the age of 61, and Riddle promoted her to HR Director at the age of 62, effective April 1, 2015. On August 9, 2015, Plaintiff turned 63. Walbro was looking for a seasoned leader for the VPHR position. Defendant hired Arkells for the VPHR position. He was 53 years old. In the Ninth Circuit an average age difference of ten years or more will be presumptively substantial, but an age difference less than 10 years will be presumptively insubstantial. *France,* 795 F.3d at 1174, *see also Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1209 (9th Cir. 2008) (9.5 years average difference between workers hired and those laid off insufficient to establish *prima facie* case of age discrimination). Here, the age difference between Plaintiff and Arkells is exactly 10 years. She makes a *prima facie* case of age discrimination.

/////

/////

3. Pretext

The burden shifts to the Defendant to give a legitimate reason for not hiring the Plaintiff for the VPHR position. Defendant submits two legitimate reasons. First, they did not hire the Plaintiff because she did not apply for the job; she took herself out of the running on August 5, 2015. Second, she was not qualified for the job. Walbro "wanted a 'seasoned leader' who had global experience and experience influencing Japanese executives." (MSJ (Doc. 62) at 2.) Riddle wanted someone "who was a strong HR leader, somebody who had played a strategic role prior, someone who had had an influential position before, where they could actually help him; . . . He wanted a seasoned leader . . . somebody that had been there, done that." *Id.* at 5. In the context of determining pretext, the Court considers the criteria Defendant actually employed to assess qualified candidates for the VPHR position. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1287 (9th Cir. 2000) (explaining question of qualifications is not answered in the abstract but is determined with respect to criteria actually employed by defendant to assess qualified candidates), see also *Cotton v. City of Alameda*, 812 F.2d 1245, 1249 (9th Cir. 1987) (explaining in context of determining whether one candidate is more qualified than another, the relevant analysis is the criteria that the employer actually uses).

With these proffers of legitimate reasons for not promoting Plaintiff to the VPHR position, "the presumption of unlawful discrimination 'simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The Plaintiff bears the ultimate burden to prove that the stated reason for the discharge was false and the true reason for the discharge was unlawful sex [and age] discrimination." *Bradley v. Harcourt, Brace and Co.,* 104 F.3d 267, 270 (9th Cir. 1996) (quoting). At summary judgment, to survive the motion, the Plaintiff must establish a genuine dispute of material fact on the question of whether or not the legitimate reasons given by the Defendant are a pretext for discrimination. *France,* 795 F.3d at 1175. She "can demonstrate pretext in either of two ways: '(1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered

explanation is unworthy of credence because it is internally inconsistent or otherwise not believable.'" *Id.* (quoting *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-1113 (9th Cir. 2011)). The Court considers both types of evidence cumulatively. *Id.* (citing *Raad v. Fairbanks N. Star Borough Sch. Dist.,* 323 F.3d 11185, 1194 (9th Cir. 2003)).

Here, the Plaintiff relies solely on circumstantial evidence. In the Ninth Circuit, there must be specific and substantial evidence of pretext, *Bradley,* 104 F.3d at 270 (citing *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir. 1994), with this standard being "tempered by [] [the] observation that a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one," *France,* 795 F.3d at 1175. "It should not take much for a plaintiff in a discrimination case to overcome a summary judgment motion." *Id.* (citations omitted).

Plaintiff fails to present any evidence of age discrimination beyond the numeric presumption which was enough to make her *prima facie* case. "Where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there is no discriminatory motive." *Brandley*, 104 F.3d at 270. Here, Riddle promoted Plaintiff to Director of HR in April, when she was 62. There is a strong inference that he had no age-based discriminatory motive for not promoting her to the VPHR position in August, on the eve of her 63 birthday. Plaintiff presents no evidence to counter this inference. The Court dismisses Plaintiff's ADEA claim.

Plaintiff's Title VII case hinges on Walbo's decision to not promote her to the VPHR position. According to Plaintiff, she requested consideration for the VPHR position by sending her August 5 email and attached resume. Her formal application for the job was short-circuited by Riddle when he told her "we are looking outside the organization for a specific type of individual." Riddle denied her the job.

First, the Court considers whether the Defendant's assertion that on August 5 by email "the Plaintiff took herself out of the running." Plaintiff must establish that this

proffered legitimate reason for not promoting her to the VPHR position is unworthy of credence because it is internally inconsistent or otherwise not believable. On February 11, 2016, Walbro responded to the administrative complaint filed by the Plaintiff and told the Arizona Civil Rights Division, Office of Attorney General, about the August 5 email. Defendant wrote then: "She stated that she had 'no expectations that I will be considered to fill the top HR role,' but suggested that she was nonetheless up to the challenges of the position." (Huggins Decl. (Doc. 82), Ex. 26 (Doc. 82-2): Clark Hill Walbro Position Statement at 3.) Defendant noted the Plaintiff's admission: "she was likely not the best candidate." *Id.* Important to this Court's determination of whether there exists any internal inconsistencies in Defendant's positions, Defendant wrote: "Riddle personally visited Huggins' office and explained to her that they needed a person with far broader and deeper experience than she offered. She seemed to accept this explanation and did not protest." *Id.* Defendant failed to inform the Attorney General what Walbro asserts now to be a legitimate reason for not hiring the Plaintiff: that the Plaintiff did not apply for the job.

The Court turns to the second allegedly legitimate reason proffered by the Defendant for not promoting the Plaintiff to the VPHR position because she was not qualified. Specifically, "she simply lacked the breadth and depth of experience necessary to lead a high-level human resources effort for a global company, to integrate Japanese and American business cultures, and to guide a new CEO in strategic moves." *Id.* at 7. [3] As explained for purposes of the *prima facie* analysis above, Riddle's declaration attestation that Plaintiff was not qualified for the VPHR position is impeached by his deposition testimony suggesting the contrary. But again, the Court does not wade-in to

---

[3] Whereas in the context of her *prima facie* case the Court considered her alleged "actual" qualifications, here in the context of pretext, the Court considers her qualifications as known by Riddle. The Plaintiff does not present any evidence that the decision at issue in this case made by Riddle was linked to any other person at Walbro. Accordingly, the challenged decision was made based on what Riddle knew regarding her qualifications, including what she told him in the August 5 email and the resume she attached to the email. It is undisputed that the resume she submitted with the August 5 email left out an HR position she held with a Japanese company in the late 1990s and omitted that she had worked for a church congregation in Japan, and she didn't highlight her fluency in Japanese and her understanding of Japanese culture. *Id.* ¶ 20.

- 14 -

resolve the debate between the parties as to Plaintiff's qualifications for the VPHR position.

Relevant in the context of pretext, evidence of superior qualifications standing alone can be sufficient to prove pretext, *Shelley,* 666 F.3d at 610 (citing *Raad,* 323 F.3d at 1194), but Plaintiff makes no such assertion. Plaintiff admits that all the candidates considered by Walbro, including Arkells, were qualified and that she was not more qualified than them. (Ds' SOF (Doc. 63) ¶¶ 57-63.) The Defendant asserts this "bolsters" the legitimacy of this proffered legitimate reason, and perhaps it does because qualifications which are so similar that they could easily be thought to be equal cannot justify a trial. *Shelly,* 666 F.3d at 617 (Bybee J., concurring in part and dissenting in part). The Court finds only that, assuming equal qualifications, no reasonable jury could think there is such a disparity in qualifications that choosing Arkells over the Plaintiff is only explainable because of sex discrimination.

What then is left to establish pretext? There is the arguably internal inconsistency between Riddle's deposition and declaration testimony already discussed in the *prima facie* section above related to Plaintiff's qualifications to apply for the VPHR position. Additionally, Plaintiff argues that Defendant's proffered legitimate reason that Plaintiff was not qualified for the promotion is internally inconsistent with its other proffer that Plaintiff did not apply because she took herself out of the running with the August 5 email. The two alleged legitimate reasons are not, necessarily, internally inconsistent. As the Court understands them, they fit together. From the August 5 email, Riddle believed that the Plaintiff understood he was looking for someone with more experience and she had, therefore, taken herself out of the running for the VPHR position, and regardless of whether she was in or out, Riddle made it clear to her in his post-August 5 conversation that he did not believe she was qualified for the job because she did not have the global and strategic expertise he wanted in a candidate for the VPHR position.

Plaintiff submits the Defendant falsely informed the Arizona Attorney General that "Riddle's first choice to fill the position was a woman-- Kay, with whom he had

previously worked. Although she was contacted, Kay ultimately was not interested in the position." (Huggins Decl. (Doc. 82), Ex. 26 (Doc. 82-2): Clark Hill Walbro Position Statement at 3.) This was not true. Defendant says it made a mistake in reporting Kay was recruited by Riddle. She was instead recruited by Enlow along with several other female candidates. Riddle had, however, before retaining Enlow, reached out to a former female colleague who had worked in HR, but she was not interested in the position so he did not pass her name on to Enlow. (Riddle Decl. (Doc. 88-2) ¶ 9.) The Court concludes that the Defendant's position statement to the Attorney General was not factually true, but it was substantially accurate. Riddle did reach out to a woman to fill the position first, and she, like Kay, who was recruited by Enlow, was not interested in the position.

Finally, Plaintiff offers statistical evidence, which can often be probative in determining the existence of discrimination, but its usefulness in proving pretext depends primarily upon its relevance to the specific decision affecting the individual plaintiff. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1283 (9th Cir. 2000). Riddle was hired in April 2015. Huggins was promoted to HR Director in April. There were then three female executive grade and salaried employees, but Guernsey would soon be stripped of her executive responsibilities and salary. Plaintiff does not provide comparative information for male executive grade and salaried employees. (P's Response (Doc. 86) at 13 (citing SOF ¶ 29.)

One month prior to Riddle's employment, in March 2015, Walbro RIFd (reduction in force) employees under the direction of C-Suite (chief-executive level officers), including Quick. Three C-Suite members, including Quick, interviewed candidates and provided input to Riddle regarding selection for the VPHR position. Statistics reflect that the RIF resulted in Sherry Bader, one of three female E3 manager-level employees, who worked under Quick, was RIFd on his say so that "he didn't think Sherry Bader did much anyway. Subsequent to the RIF, there were then 21 male managers and only two women. At the time she was Design Manager at the Cass City Michigan plant, Sherry Bader was paid less than some of the male employees who reported to her. She had no

1 performance problems and was well respected by designers who reported to her. After
2 the RIF, she was rehired to perform her same duties minus her supervisory
3 responsibilities with a 25% pay cut. The design group, which had been dispersed dureing
4 the RIF, was put back together and a man, who had previously reported to her was made
5 manger, with Sherry Bader reporting to him. To the extent is evidence of pretext, the
6 Plaintiff presents no evidence to link Quick to Riddle's decision to not consider Plaintiff
7 for the VPHR position. The record reflects that Riddle acted alone, subsequent to
8 receiving Plaintiff's August 5 email, when he told her that she would not be considered
9 for the position. *Id.* at 13-14 (citing SOF ¶¶ 30-36).

In summary, the Court has before it the arguably impeachable statement by Riddle that Plaintiff was not qualified for the job and the substantially true but factually inaccurate statement about Kay. The Court does not find an internal inconsistency between Defendant's assertion that the Plaintiff was not a qualified candidate for the VPHR position and took herself out of the running for it. The Court finds that the Plaintiff has not presented evidence reflecting significant or substantial changes over time in Defendant's proffered reason for its employment decision to not promote the Plaintiff to the VPHR position. *Briscoe v. Fred's Dollar Store, Inc.*, 24 F.3d 1026, 1028 (8th Cir.1994) (describing shift in employer's position as being significant or substantial).

Pretext means more than an inconsistency or a mistake; pretext is "a lie, specifically a phony reason for some action." *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1261 (11th Cir.2001). On summary judgment, pretext means that the Plaintiff has raised a material issue of fact from which a reasonable jury might conclude that Defendant's decision to not promote Plaintiff to the VPHR position was because her sex was female. The Court finds that a rational trier of fact could not find any internal

/////
/////
/////
/////

inconsistencies exist to show the Defendant's stated reasons were pretextual for sex discrimination.

**Accordingly,**

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 62) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment for the Defendant and against the Plaintiff.

Dated this 11th day of May, 2018.

_____
Honorable David C. Bury
United States District Judge